UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

KRISTEN GIRONDA,

                           Plaintiff,              **MEMORANDUM & ORDER**
                                                  19-CV-4301 (MKB)

        v.

SHOREHAM-WADING RIVER CENTRAL
SCHOOL DISTRICT, CHRISTINE CARLSON,
ALAN MEINSTER, BRIAN HEYWARD,
STEVEN COHEN and GERALD POOLE,

                          Defendants.
--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Kristen Gironda commenced the above-captioned action on July 25, 2019,

against Defendants Shoreham-Wading River Central School District, Christine Carlson, Alan

Meinster, Brian Heyward, Steven Cohen, and Gerald Poole.  (Compl., Docket Entry No. 1.)

Plaintiff asserts claims of hostile work environment based on gender and retaliation based on

internal and formal harassment complaints in violation of Title VII of the Civil Rights Act, 42

U.S.C. § 2000 *et seq.* ("Title VII"), and the New York State Human Rights Law section 296,

N.Y. Exec. Law § 296 *et seq.* ("NYSHRL").  (*Id.* ¶¶ 127–136.)  On May 20, 2020, the Court

granted in part Defendants' motion to dismiss the Complaint, dismissing all of Plaintiff's claims

except for her retaliation claims.  (Min. Entry dated May 20, 2020.)  On July 7, 2020, the Court

dismissed Plaintiff's retaliation claim based on a 2014 internal harassment complaint.  (Order

dated July 7, 2020.)

       Defendants now move for summary judgment as to Plaintiff's remaining retaliation

claims, which are based on other internal complaints of harassment and a New York State

Department of Human Rights ("NYSDHR")/Equal Employment Opportunity Commission

("EEOC") complaint, and Plaintiff opposes the motion.[1]  For the reasons set forth below, the

Court grants Defendants' motion for summary judgment.

## I.  Background

### a.  Factual background

The following facts are undisputed unless otherwise noted.[2]

#### i.  The parties

Plaintiff is a teacher employed by Shoreham-Wading River Central School District (the

"District").  (Defs.' 56.1 ¶ 1.)  She is certified to teach pre-kindergarten, kindergarten, and first

through sixth grade.  (*Id.* ¶ 2.)  The District assigned Plaintiff to teach the fourth grade when they

first hired her, (*id.* ¶ 3), and in or around 2005, the District reassigned Plaintiff to teach the

second grade, (*id.* ¶ 4).

Carlson was Plaintiff's supervisor and the principal at the school where Plaintiff worked

prior to Plaintiff's transfer to another school in the District in 2018.  (*Id.* ¶ 5; Involuntary

Transfer Letter, annexed to Kallus Decl. as Ex. 22, Docket Entry No. 38-22.)  Cohen was the

former District Superintendent of Schools before Poole took over the role in the summer of 2017.

(Defs.' 56.1 ¶¶ 7, 10.)  Meinster is the District Assistant Superintendent of Curriculum and

Instruction.  (*Id.* ¶ 8.)  Heyward is the Assistant Superintendent of Human Resources.  (*Id.* ¶ 9.)

---

[1]  (Defs.' Mot. for Summ. J. ("Defs.' Mot."), Docket Entry No. 34; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 34-1; Defs.' Reply in Support of Defs.' Mot. for Summ. J ("Defs.' Reply"), Docket Entry No. 37; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 93.)

[2]  (Defs.' Stmt. of Undisputed Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1"), Docket Entry No. 34-2; Pl.'s Rule 56.1 Counter-Stmt. ("Pl.'s 56.1"), Docket Entry No. 36-1.)

### ii.   Complaints related to violations of allergy protocols

In the 2012–2013 school year, Plaintiff began documenting and reporting violations of a student's Individual Health Plans, which are protocols for a student with life-threatening allergies, and became concerned with the school administrators' responses to her reports.[3] Administrators did not want to hear Plaintiff's complaints and accused her of voicing them because she had a "personal vendetta" against the then-Principal Louis Parrinello.  (Gironda Dep. 42:1–18.)  Working under Principal Parrinello became "increasingly difficult[,]" and Plaintiff requested a transfer to another building, (Defs.' 56.1 ¶ 63; Gironda Dep. 29:13–21), but Parrinello was involuntarily transferred that year, (Defs.' 56.1 ¶ 63).

### iii.   2014 sexual harassment allegations and investigation

In May of 2014, Plaintiff advised her union representative that Assistant Superintendent Lou Curra had sexually harassed her by inappropriately touching her shoulder.  (*Id.* ¶ 12; Pl.'s 56.1 ¶ 12.1.)  The District appointed an attorney to investigate the complaint, and in the attorney's initial report she found that the incident had occurred but did not constitute sexual harassment.  (Pl.'s 56.1 ¶¶ 12.2–12.3.)  The District later asked the attorney to reinterview Plaintiff, and the attorney prepared a supplemental report and found that the "[t]he incidents complained of occur frequently and continuously" and "are sufficiently pervasive to support that a person in her position would find the work environment to be hostile or abusive and that [Plaintiff] has been subjected to a pattern of harassment."  (*Id.* ¶ 12.5; Bronwyn Black's Suppl. Findings and Recommendations 15, annexed to Kallus Decl. as Ex. 12, Docket Entry No. 38-12.)

---

[3]  (Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶ 11.1; Letter from Law Office of Dara Martin-Orlando, PLLC to Principal Louis Parrinello dated May 15, 2013, annexed to Novitz Decl. as Ex. P, Docket Entry No. 35-2; Dep. of Kristen Gironda ("Gironda Dep.") 21:22–25, 42:1–18, annexed to Novitz Decl. as Exs. I and J, Docket Entry No. 35.)

The attorney ultimately concluded that there were "sufficient allegations of a pattern of harassment that would warrant more in-depth investigation." (*Id.*) The District subsequently retained a different investigator who determined that the complaints were unfounded. (Defs.' 56.1 ¶ 12; Pl.'s 56.1 ¶ 12.9.)

### iv. Deterioration of Plaintiff's relationship with Carlson

In May of 2015, Plaintiff became aware that her coworkers had complained about her to her supervisors, including her school principal Carlson. (Defs.' 56.1 ¶ 14; Pl.'s 56.1 ¶ 14.1.) Plaintiff complained to Carlson that no one had notified her of the complaints or of their bases. (Defs.' 56.1 ¶ 14; Pl.'s 56.1 ¶¶ 14.2–14.3.) Carlson was hostile toward her and dismissive of her complaints. (Pl.'s 56.1 ¶ 14.2; Gironda Dep. 55:3–56:11.)

In August of 2015, Carlson asked Plaintiff to fill out an incident report after Plaintiff slipped, but did not fall, at school. (Defs.' 56.1 ¶ 15; Pl.'s 56.1 ¶ 15.1.) Plaintiff did not believe that there was a need for her to fill out the report because she was not injured and thought Carlson asked her to fill out the report because she was assertive and behaved differently than many women. (Pl.'s 56.1 ¶¶ 16.1–16.2.) Plaintiff refused to fill out the report and contacted Carlson's supervisor, Heyward, complaining that Carlson's request was discriminatory and retaliatory. (Defs.' 56.1 ¶ 17.)

Sometime in the fall of 2015, Carlson put together a team-building experience for the teachers by assigning the teachers to teams and having the teams compete for points. (Defs.' 56.1 ¶ 20; Pl.'s 56.1 ¶¶ 20.1–20.2; Gironda Dep. 79:1–82:13.) Plaintiff did not approve of the experience because she believed it would be "divisive" and "encourage[] harass[ment] and intimidat[ion.]" (*Id.*) Plaintiff did not speak to Carlson but contacted Cohen, and informed him

of "all of the things [she] thought were wrong with her team-building experience" and told him she did not wish to participate.  (*Id.*)

On December 9, 2015, Plaintiff complained to Heyward and Cohen about the way Carlson handled a student bullying incident.  (Defs.' 56.1 ¶¶ 18–19; Pl.'s 56.1 ¶ 18.1; Pl.'s Email dated December 9, 2015, annexed to Novitz Decl. as Ex. S, Docket Entry No. 35-2.) Plaintiff contends that even though the Dignity for All Students Act required her to report the incident, Carlson told her not to report the bullying incident.  (Pl.'s 56.1 ¶¶ 18.2–18.3.)

On December 11, 2015, Plaintiff sent an email to Cohen requesting that all future correspondence between herself and Carlson be in writing and that a witness be present for any necessary in-person conversations.  (Defs.' 56.1 ¶ 26.)

In May of 2016, after a formal classroom evaluation, Carlson rated Plaintiff effective and highly effective for every criteria and wrote, "In the future, I look forward to seeing a lesson that has not been previously observed."  (*Id.* ¶ 22; Pl.'s May 2016 Evaluation by Carlson, annexed to Novitz Decl. as Ex. U, Docket Entry No. 35-2.)  Plaintiff filed a grievance objecting to that comment because she believed Carlson included the sentence to discriminate against her; Plaintiff admitted that she had previously presented the lesson for observation.  (Defs.' 56.1 ¶¶ 22–24.)

On December 5, 2016, Carlson emailed Plaintiff informing her that she had scheduled pre-observation conferences with all the teachers that year and that Plaintiff's pre-observation conference had been scheduled for December 13, 2016.  (Defs.' 56.1 ¶ 31.)  Plaintiff complained that Carlson did not provide her with adequate notice of the conference and she believed that Carlson's email was discriminatory because she did not believe he scheduled pre-observation meetings with all the teachers.  (*Id.* ¶¶ 31–33; Pl.'s 56.1 ¶¶ 31.1– 32.1.)

5

### v.  Attempts to resolve disputes

During the 2016–2017 school year, Plaintiff and then-Interim Superintendent, Neil Lederer, with the District's approval, attempted to resolve Plaintiff's disputes.  (Pl.'s 56.1 Suppl. Stmt. of Facts ("Pl.'s 56.1 Suppl.") ¶ 1, Docket Entry No. 36-1.)  Plaintiff contends that she agreed to resolve the disputes with Lederer, but the Board of Education rejected their agreement. (Gironda Dep. 150:9–151:9; Proposed Resolution, annexed to Kallus Decl. as Ex. 23, Docket Entry No. 38-23.)

In August of 2017, Plaintiff emailed Poole, the incoming District Superintendent, to complain about school-related issues.  (Defs.' 56.1 ¶¶ 34–35; Pl.'s 56.1 ¶ 34.1.)

### vi.  2018 harassment complaint relating to security guards

On January 8, 2018, Union President Mary Hygom emailed Plaintiff to discuss Plaintiff's "harassment complaint," including Plaintiff's allegations that a security guard was following her around the building and that she had been improperly denied a new easel.  (Defs.' 56.1 ¶ 37.)  On February 27, 2018, Plaintiff emailed Poole, Heyward and the Board of Education complaining that she was being followed around the school and monitored by school staff and security guards. (*Id.* ¶ 39.)  In the February of 2018 email, Plaintiff notified the recipients that it was a "formal complaint" and also informed them that "these incidents further support [her] complaints of harassment, retaliation and intimidation," and also informed them that the incidents "have been documented for the EEOC complaint that is being filed on [her] behalf against the . . . District."[4]

---

[4]  Prior to this February 2018 email, on January 26, 2018, Plaintiff sent an email to Heyward and mentioned a pending EEOC complaint.  (Pl.'s Email dated January 26, 2018, annexed to Kallus Decl. as Ex. 25, Docket Entry No. 38-25.)  In the January of 2018 email, Plaintiff did not provide any additional information about the allegations in the EEOC complaint. (*Id.*)

(Pl.s' Email dated February 27, 2018, annexed to Novitz Decl. as Exhibit CC, Docket Entry No. 35-2.)

On April 5, 2018, Plaintiff emailed Heyward, Poole, Hygom and the Board of Education concerning her complaint against a security guard "for the aggressive and intimidating manner in which he stares at [her] and makes [her] uncomfortable." (Defs.' 56.1 ¶ 40.) Plaintiff contends that one of the guards followed her into a book room and intimidated her. (Pl.'s 56.1 ¶¶ 39.2–39.3; Gironda Dep. 218:23–25.) Heyward investigated the complaints and published a report dated April 25, 2018, concluding the complaints of harassment, retaliation and intimidation were unfounded. (Defs.' 56.1 ¶¶ 41–44.)

### vii.   2018 teaching evaluation and rebuttal

In Plaintiff's 2017–2018 evaluation, Carlson rated Plaintiff effective and highly effective across all categories. (2017–2018 Observation and Rebuttal, annexed to Kallus Decl. as Ex. 18, Docket Entry No. 38-18.) On February 26, 2018, Plaintiff filed a response to the evaluation complaining about comments Carlson purportedly made during the post-observation conference. (Pl.'s 56.1 Suppl. ¶ 2; 2017–2018 Observation and Rebuttal.) Plaintiff contends that Carlson repeatedly told Plaintiff that she was concerned that Plaintiff thought her "lesson was perfect" and believed "[Plaintiff] had no intention of changing [or improving on] it." (Pl.'s 56.1 Suppl. ¶ 2; 2017–2018 Observation and Rebuttal 12–13.) In the response, Plaintiff stated that she would be including the incident in the EEOC complaint. (Pl.'s 56.1 Suppl. ¶ 3.)

### viii.   Decision to involuntarily transfer Plaintiff

Sometime in the winter or early spring of 2018, Poole became aware of an upcoming opening at the sixth grade and began considering the possibility of involuntarily transferring Plaintiff to fill the opening. (Defs.' 56.1 ¶¶ 46–47.) On May 14, 2018, Carlson wrote to

Heyward concerned about her ability to effectively supervise Plaintiff, given their strained relationship. (*Id.* ¶ 45.) At some point, Poole asked counsel to the District "to do research in connection with the involuntary transfer of Plaintiff," (*id.* ¶ 50), and District Counsel prepared a memorandum dated May 15, 2018, instructing Poole to both send a letter and meet with the teacher to effectuate the transfer, (*id.* ¶¶ 51–52).

Poole contends that the decision to transfer was based on: (1) Plaintiff's strained relationship with Carlson and Carlson's inability to evaluate and effectively supervise Plaintiff; (2) Plaintiff's complaints and relationships with the security guards and clerical staff; (3) the opening at the sixth-grade position; and (4) the fact that Plaintiff was qualified for the position and an effective teacher. (*Id.* ¶ 48; Dep. of Gerard Poole ("Poole Dep.") 33:23–34:15, annexed to Novitz Decl. as Ex. M, Docket Entry No. 35-2.) Heyward also discussed the transfer with Poole and believed the position would be a good match for Plaintiff's skill set. (Defs.' 56.1 ¶ 49.)

### ix. Delivery of the NYSDHR complaint

On June 4, 2018, Plaintiff was absent from work and served the District with copies of her not yet filed NYSDHR complaint,[5] (*id.* ¶¶ 54, 57–58), and Defendants received notice that the NYSDHR complaint had been hand-delivered to the office,[6] (Pl.'s 56.1 ¶ 57.1.) The

---

[5] Plaintiff prepared one complaint for both the NYSDHR and the EEOC. (*See* NYSDHR Compl. dated June 4, 2018 ("NYSDHR Compl."), annexed to Novitz Decl. as Ex. F, Docket Entry No. 35.) Because Plaintiff filed the complaint with NYSDHR and authorized the NYSDHR to accept it on the behalf of the EEOC, the Court refers to it as the NYSDHR complaint.

[6] Poole testified that he received a copy of the NSYDHR complaint "on or about" June 4, 2018. (Poole Dep. 33:24–25.) Hayward could not confirm the date on which the NYSDHR complaint was delivered, but did confirm that he received notice of the delivery the same day. (Dep. of Brian Heyward ("Heyward Dep.") 61:5–19, annexed to Kallus Decl. as Ex. 7, Docket Entry No. 38-7.)

NYSDHR complaint had not been signed by Plaintiff's attorneys and indicated that the last discrimination event had occurred on June 11, 2018, a week after Plaintiff provided Defendants with copies of the NYSDHR complaint. (*Id.* ¶¶ 58–59.)

Plaintiff alleged in the NYSDHR complaint that Defendants had violated "her rights under the anti-gender discrimination and anti-retaliation provisions" of Title VII and the NYSHRL, and were "creating and continuing a hostile work environment with the intention to interfere with [her] job performance on a daily basis." (NYSDHR Compl. dated June 4, 2018 ("NYSDHR Compl.") ¶ 5, annexed to Novitz Decl. as Ex. F, Docket Entry No. 35.) In addition, Plaintiff alleged that she had been: (1) treated with hostility and subject to complaints because she had reported violations of allergy protocols to the displeasure of her coworkers and supervisors in 2013; (2) sexually harassed by inappropriate touching by the Assistant Superintendent of Human Resources and Personnel, Lou Curra, in 2014; (3) treated unfairly and with hostility since making the 2014 sexual harassment complaint; and (4) followed around the school and harassed by security guards from 2017–2018. (*See id.*) Plaintiff further alleged that these events "create[d] a work atmosphere where a reasonable person would certainly find to be hostile to the point where it would clearly interfere with job performance," (*id.* ¶ 103), and "were intended to injure [her] professional reputation and job security, in retaliation against her for exercising her rights to make complaints regarding policy violations, unsafe environment, and the ongoing harassment she has been subject to," (*id.* ¶ 104).

### x.   Notice of involuntary transfer

After serving the NYSDHR complaint on June 4, 2018, Plaintiff was absent from work for two additional days and returned to work on June 7, 2018. (*Id.* ¶¶ 60–61.) On June 7, 2018, Plaintiff met with Hygom, Poole, and Heyward, and they notified Plaintiff of the transfer. (*Id.* ¶

61.)  Poole provided Plaintiff with a written notice of the transfer dated June 5, 2018, and Poole testified that the date added to the written notice would typically be the scheduled date of the meeting.  (*Id.* ¶¶ 55–56.)

### xi.   Impact of transfer and subsequent actions

Plaintiff's salary, responsibilities, and benefits were not reduced as a result of the transfer.  (*Id.* ¶ 88.)  The transfer required Plaintiff to create new relationships with administrators, develop and teach a new curriculum, acquire new resources and supplies, and work in an inclusion setting (with the assistance of a special education teacher) for the first time.  (Pl.'s 56.1 ¶¶ 80.1, 87.1; Gironda Dep. 348:18–349:4.)  Plaintiff liked her new position better than her old position, is happier there, prefers the new school building, and likes her new coworkers better.  (Defs.' 56.1 ¶¶ 78–82.)

Plaintiff contends that after the transfer, she dealt with a problematic roster,[7] and was assigned to a classroom with poor ventilation and an unprotected computer server.  (Pl.'s 56.1 ¶ 88.3; Gironda Dep. 243:12–244:7, 309:5–310:3, 312:22–314:19.)  Poole "placed [her] with the largest roster of any of the sixth grade and an inclusion setting," and subjected her to a classroom with a purportedly hazardous computer server and without proper ventilation or windows during the COVID-19 pandemic.  (*Id.* at 309:12–310:2.)  Plaintiff did not know who made the rosters for the middle school, (*id.* at 245:12–14), but knew that the District, specifically either Meinster, Poole or Heyward, has the "final say," (*id.* at 248:5–10).

In addition, Plaintiff requested the transfer of a student out of her class due to a conflict between herself and the student's family, but contends that the School District discriminated

---

[7]  Plaintiff also complained that her 2016–2017 and 2017–2018 classroom rosters were unfairly balanced.  (Defs.' 56.1 ¶ 77; Pl.'s 56.1 ¶ 77.1.)

against her by refusing to honor her request.[8]  (Pl.'s 56.1 ¶ 76.1; Gironda Dep. 244:1–22.)

Plaintiff's colleague made a similar request and that request was accommodated the same day.

(Gironda Dep. 244:5–7.)

### xii.   Purported bases for discrimination

Plaintiff testified that because "[she is] a strong female who doesn't bow down or cow-

tail away from opposition," Defendants and her coworkers did not like her and did not treat her

fairly.  (Defs.' 56.1 ¶ 74.)  She also contends that Defendants discriminated against her "because

[she is] assertive and [] stand[s] up for [herself]" and because she "[does not] fit the mold or the

stereotype that they expect women to have."  (*Id.* ¶ 75.)

### xiii.   Filing and dismissal of the NYSDHR complaint

On June 25, 2018, Plaintiff filed the NYSDHR complaint with the NYSDHR and

authorized the NYSDHR to accept the NYSDHR complaint on the behalf of the EEOC.  (*Id.* ¶

64; NYSDHR Compl.)

The NYSDHR dismissed the complaint, finding no probable cause to believe Defendants

had engaged in unlawful discrimination towards Plaintiff.  (Defs.' 56.1 ¶ 65.)  NYSDHR found

that "the evidence does not reveal that [Plaintiff's] allegations timely and/or untimely bear a

nexus to protected class discrimination."  (NYSDHR Determination and Order after

Investigation 3, annexed to Novitz Decl. as Ex. G, Docket Entry No. 35.)  It also found that there

was no discrimination "based on gender, hostile work environment, harassment and/or

differential treatment, or retaliation as defined by the Human Rights Law."  (*Id.*)  The EEOC

---

[8]  According to Plaintiff's Counter-Statement of Undisputed Facts, Plaintiff made this request during the 2019–2020 school year, not the 2018–2019 school year.  (Pl.'s 56.1 ¶ 77.1.) However, the timing is not clear from Plaintiff's testimony, (Gironda Dep. 243:7–244:7), and Poole testified that he believed this request was made during the 2020–2021 school year, (Poole Dep. 36:3–37:18).

11

adopted the findings of the NYSDHR and dismissed the case.  (Defs.' 56.1 ¶ 68.)  Plaintiff did

not appeal the dismissal.  (*Id.* ¶ 67.)

>    **b.   Procedural background**

On November 20, 2019, Defendants moved to dismiss the Complaint pursuant to Rule 12

of the Federal Rules of Civil Procedure 12(b)(6).  (Defs.' Mot. to Dismiss for Failure to State a

Claim pursuant to Rule 12(b)(6) ("Defs.' Mot. to Dismiss), Docket Entry No. 10.)  The Court

granted the motion as to (1) the state law claims after finding them procedurally barred; and (2)

the claim of Title VII hostile work environment based on gender for failure to state a claim.

(Min. Entry dated May 20, 2020.)  The Court deferred decision as to Plaintiff's Title VII

retaliation claim based on her 2014 harassment complaint and directed the parties to provide

additional briefing addressing whether the equitable tolling doctrine should apply and what, if

any, adverse action Plaintiff alleged in connection with the 2014 complaint.  (*Id.*)  The Court also

denied the motion as to Plaintiff's Title VII retaliation claim based on Plaintiff's NYSDHR

complaint and her subsequent transfer to teach a different grade.  (*Id.*)  The Court subsequently

granted Defendants' motion as to Plaintiff's Tile VII retaliation claim based on the 2014

harassment complaint and dismissed the claim for the reasons previously stated on the record and

based on Plaintiff's failure to submit any further meritorious arguments in support of her claim.

(Order dated July 7, 2020.)  Thus, Plaintiff's Title VII retaliation claim based on the NYSDHR

complaint, and subsequent transfer to teach a different grade remain pending before the Court.

The Court also considers Plaintiff's claims that she engaged in protected conduct when she

notified Defendants of her intent to file an EEOC complaint, and that Defendants also retaliated

against her by removing her from certain committees, criticizing her in a 2018 classroom

evaluation, giving her a problematic roster assignment, and assigning her to a classroom with poor ventilation and a hazardous computer server.  (Pl.'s 56.1 ¶ 88.3; Pl.'s Opp'n 1–2, 8.)

## II.   Discussion

### a.   Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021); *Windward Bora, LLC v. Wilmington Sav. Fund Soc'y*, 982 F.3d 139, 142 (2d Cir. 2020).  The court must "constru[e] the evidence in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006)).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

In cases that involve claims of discrimination, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).  However, "the salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).  Striking this balance requires that to survive summary judgment "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact," *Holtz*, 258 F.3d at 69 (quoting *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997)).  "Because the district court is not to resolve issues of fact on a summary judgment motion, 'its determination of whether the circumstances give rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'" *Abdelal v. Police Comm'r*, 857 F. App'x 30, 31 (2d Cir. 2021) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) (alterations omitted)).

###### b.   Title VII retaliation claim

Defendants argue that Plaintiff cannot establish a prima facie retaliation claim, and regardless, Defendants have articulated legitimate, non-retaliatory reasons for the involuntary transfer and Plaintiff fails to show that these reasons are pretext.  (Defs.' Mem. 6–19.)

Plaintiff argues that her retaliation claim is "premised upon retaliatory actions taken by Defendants" including "the involuntary transfer of Plaintiff from the school where she had been teaching to another school in the School District and subsequent actions."[9]  (Pl.'s Opp'n 1–2.) Plaintiff contends that she has established a prima facie retaliation claim, (*id.* at 6–14), and a reasonable jury could find Defendants' articulated reasons for the involuntary transfer to be pretextual, (*id.* at 16–17).

Title VII prohibits retaliation against an employee who "has opposed any practice [that is] made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-3(a); *Green v. Mount Sinai Health Sys., Inc.*, 826 F. App'x 124, 125 (2d Cir. 2020) ("Title VII prohibits employers from retaliating against any employee because that individual has opposed any practice made unlawful by Title VII." (quoting *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015))).  Title VII retaliation claims are "evaluate[d] . . . using the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Russell v. N.Y.U.*, 739 F. App'x 28, 32 (2d Cir. 2018) (citing *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018)).  Under the framework, the plaintiff must first establish "a *prima facie* case of retaliation."  *Id.* (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).  To establish a

---

[9]  As mentioned above, Plaintiff also contends that Defendants removed her from certain committees, criticized her in a 2018 classroom evaluation, gave her a problematic roster assignment, and assigned her to a classroom with poor ventilation and a hazardous computer server.  (Pl.'s 56.1 ¶ 88.3; Pl.'s Opp'n 1–2, 8.)

prima facie case of retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (quoting *Hicks*, 593 F.3d at 164). If the plaintiff sustains this initial "*de minimis*" burden, *Duplan*, 888 F.3d at 626, a "presumption of retaliation" arises and the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action," *Saji v. Nassau University Medical Center*, 724 F. App'x 11, 14 (2d Cir. 2018) (quoting *Hicks*, 593 F.3d at 164). "If the defendant does so, then the burden shifts back to the plaintiff . . . [to] show that the reason offered by the employer is merely pretext, and that the employer's 'desire to retaliate' was the actual 'but-for cause of the challenged employment action.'" *Saji*, 724 F. App'x at 14 (quoting *Ya-Chen Chen*, 805 F.3d at 70)). "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d at 625 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015)).

The Court separately considers Plaintiff's retaliation claim based on (1) the involuntary transfer, and (2) all other purported adverse actions, including (a) a 2018 classroom evaluation, (b) Plaintiff's roster assignment and (c) Plaintiff's classroom assignment.

### i.   Retaliation claim based on involuntary transfer

#### 1.   Prima facie case

Defendants argue that Plaintiff has not established a prime facie case because Plaintiff has not shown that (1) she engaged in any protected activity when she notified Defendants she would be filing a complaint or when she provided them with copies of the not yet filed

NYSDHR complaint: (2) Defendants were aware of the protected activity prior to making the decision to transfer Plaintiff; (3) the involuntary transfer constituted an adverse employment action; or (4) any causal connection between the purported protected activity and the involuntary transfer.  (Defs.' Mem. 6–18; Defs.' Reply 2–9.)

Plaintiff argues that she has provided evidence to establish each of the elements of a prima facie case.  (Pl.'s Opp'n 6–14.)

### A.   Protected activity and Defendants' knowledge of the activity

Defendants argue that none of Plaintiff's conduct constituted protected activity and provide several reasons.  (Defs.' Mem. 8–9; Defs.' Reply 2–6.)  First, Defendants argue that the "Court has already reviewed the complaint and determined the only 'protected activity' identified was the [NYSDHR] complaint."[10]  (Defs.' Reply 2.)  Second, that the delivery of the NYSDHR complaint did not constitute protected activity because it "failed to allege that the discrimination or hostility in the workplace she felt was a result of her gender."  (Defs.' Mem. 8.)  Defendants argue that "the only allegation" in the NYSDHR complaint "that could remotely be considered based on her gender was that prior Assistant Superintendent Lou Curra had squeezed and rubbed her in 2014" and further argue that this allegation was time barred, "not brought in good faith[,]" and not objectively reasonable.  (*Id.*)  Third, there is no evidence in the record that any employee of the school district discriminated against Plaintiff on the basis of gender or sex stereotyping.  (Defs.' Reply 2–4.)  In support, Defendants argue that there is no evidence that

---

[10]  Defendants argue that "[i]f the Court were to entertain Plaintiff's contention that her comments sent prior to June 4, 2018 were also protected activity[,] . . . the Court would have to consider the entirety of the complaint which has already been dismissed, as she . . . first retained attorneys five years prior to her EEOC filing."  (Defs.' Reply 2.)

anyone made statements about or to Plaintiff that were based on stereotypes and Plaintiff has "proffered only the conclusory statement that the harassment occurred because she is a woman." (*Id.* at 3–5.)  Finally, Defendants argue that even if providing them with copies of the NYSDHR complaint constituted protected activity, Defendants made the decision to transfer Plaintiff prior to that act.  (Defs.' Mem. 9.)

Plaintiff argues first, that she engaged in protected conduct from January of 2018 to June 4, 2018, "when she notified school personnel that she intended to file a[] [NYSDHR] complaint and when she prepared and delivered copies of her complaint."  (Pl.'s Opp'n 2, 9.)  Second, that she had a good faith and reasonable belief that Defendants were discriminating against her based on sex stereotyping, for not conforming to the traditional role of women in the workplace.  (*Id.* at 10–11.)  Lastly, Plaintiff argues that Defendants were aware that she would be filing a formal complaint before Defendants made the decision to transfer her, and she delivered copies of the NYSDHR complaint to the District Office before Defendants notified her of the decision to transfer her and even prior to the date stated on the involuntary transfer letter.  (*Id.* at 9–12.)

Filing either a formal or informal complaint challenging discrimination is a protected activity for purposes of retaliation claims under Title VII.  *See Jagmohan v. Long Island R.R. Co.*, 622 F. App'x 61, 63–64 (2d Cir. 2015); *Summa v. Hofstra Univ.*, 708 F.3d 115, 126–27 (2d Cir. 2013).  "A complaint of discrimination constitutes 'protected activity' only if (1) the plaintiff holds a good-faith belief that [s]he suffered discrimination because of a protected characteristic and (2) that belief is reasonable."  *Jagmohan*, 622 F. App'x at 63–64 (citing *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *Summa*, 708 F.3d at 126 (citing *Galdieri-Ambrosini*, 136 F.3d at 292) ("[The plaintiff] need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a

18

good faith, reasonable belief that the underlying employment practice was unlawful under that statute."); *Gregory v. Daly*, 243 F.3d 687, 700–701 (2d Cir. 2001) (holding that Title VII "protects employees [who] . . . mak[e] [] informal protests of discrimination, including making complaints to management, so long as the employee has 'a good faith, reasonable belief that the underlying challenged actions of the employer violated the law'" (first quoting *Matima v. Celli*, 228 F.3d 68, 78 (2d Cir. 2000); and then quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998))). "[A]ttempts to assert . . . rights against discrimination are protected activities." *Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002)).

However, complaints cannot be so vague or "generalized" that the employer "could not reasonably have understood that [the plaintiff] was complaining of 'conduct prohibited by [antidiscrimination laws].'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (quoting *Galdieri-Ambrosini*, 136 F.3d at 292); *see also Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 28 (2d Cir. 2013) (finding that the plaintiff failed to demonstrate that the defendant had knowledge of his protected activity because his complaints "did not implicitly or explicitly alert [the defendant] that he was complaining of disparate treatment based on sex — and thereby was engaging in a protected activity"); *Galdieri-Ambrosini*, 136 F.3d at 292 ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by [antidiscrimination laws]."); *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 280 (E.D.N.Y. 2013) ("When making the complaint, a plaintiff must do so in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of [the

protected status]." (internal quotation marks and citation omitted)).  It is not necessary that

Plaintiff prove that the specific actors knew of the protected activity as long as Plaintiff can

demonstrate general corporate knowledge.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834,

844 (2d Cir. 2013) ("[F]or purposes of a prima facie case, a plaintiff may rely on 'general

corporate knowledge' of her protected activity to establish the knowledge prong of the prima

facie case."); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir.

2011) ("Even if the agents who carried out the adverse action did not know about the plaintiff's

protected activity, the 'knowledge' requirement is met if the legal entity was on notice. 'Neither

this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more

is necessary than general corporate knowledge that the plaintiff has engaged in a protected

activity.'" (citations omitted)); *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010)

("( [A] jury may 'find retaliation even if the agent denies direct knowledge of a plaintiff's

protected activities, for example, so long as the jury finds that the circumstances evidence

knowledge of the protected activities or the jury concludes that an agent is acting explicitly or

implicit[ly] upon the orders of a superior who has the requisite knowledge.'" (alteration in

original) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000)))); *Trivedi v.

N.Y.S. Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 736 (S.D.N.Y. 2011) ("A

plaintiff need not prove that the specific actors within an organization were aware that the

plaintiff made allegations of retaliation to make out a prima facie retaliation claim; rather,

'general corporate knowledge that the plaintiff has engaged in a protected activity' is sufficient."

(citation omitted)).

### (1)    Written notices of pending EEOC complaint

Plaintiff did not participate in protected activity when she notified school personnel that she intended to file an EEOC complaint.  Although Plaintiff complained of ongoing harassment and notified Defendants she would be filing an EEOC complaint, those complaints did not put Defendants on notice that her complaints were directed at conduct prohibited by Title VII because Plaintiff did not state or otherwise make clear that she was complaining of gender discrimination, sexual harassment, or retaliation.  On January 26, 2018, Plaintiff emailed Defendants that they would be hearing from her attorneys "shortly following the completion of [the] EEOC complaint."  (Pl.'s Email dated January 26, 2018, annexed to Kallus Decl. as Ex. 25, Docket Entry No. 38-25.)  On February 26, 2018, Plaintiff filed a rebuttal to Carlson's 2018 evaluation, taking issue with Carlson's remarks, and with the Defendants' refusal of her request for a different evaluator or a witness "[d]espite Ms. Carlson's ongoing harassment and retaliation."  (2018 Observation and Rebuttal, annexed to Kallus Decl. as Ex. 18, Docket Entry No. 38-18.)  On February 27, 2018, Plaintiff submitted a complaint alleging harassment by the school security guards and indicated that the incidents would be included in the EEOC complaint being filed on her behalf.  (Pl.'s Email dated February 27, 2018.)  Plaintiff did not state in any of these complaints that the alleged harassment was sexual in nature or based on her gender and nor could Plaintiff's employer have inferred that the complaint was based on gender or sexual harassment.  *See Fattoruso, LLC*, 525 F. App'x at 28 (holding that the plaintiff failed to demonstrate that the defendant had knowledge of his protected activity because his complaints "did not implicitly or explicitly alert [the defendant] that he was complaining of disparate treatment based on sex — and thereby was engaging in a protected activity"); *Galdieri–Ambrosini*, 136 F.3d at 292 (finding the evidence insufficient to support the plaintiff's retaliation

claim where the plaintiff's complaints "did not state that [the plaintiff] viewed [her supervisor's] actions as based on her gender, and there was nothing in her protests that could reasonably have led [the defendant] to understand that that was the nature of her objections"); *Brown v. City of New York*, No. 11-CV-2915, 2013 WL 3789091, at *15 (S.D.N.Y. July 19, 2013) (finding that the plaintiff's memorandum describing the offender's "troubled and provocative" behavior was not protected activity because it made "no explicit mention of any alleged sexual harassment" and only made "glancing references to any gender-focus on that behavior"). Plaintiff's generalized complaints of "ongoing harassment and retaliation" and statements that she would soon be filing an EEOC complaint were inadequate to ensure that Defendants were aware that Plaintiff was complaining of conduct *prohibited by Title VII. See Rojas*, 660 F.3d at 102, 108 (finding the plaintiff's complaints that the pastor was making her life miserable and her separate notice that she wished to discuss sexual harassment did not raise specific concerns of sexual harassment by the pastor, such that the defendants could not have reasonably understood she was complaining of conduct prohibited by Title VII).

### (2)   NYSDHR complaint

Plaintiff did engage in protected conduct on June 4, 2018, when she provided Defendants with copies of the NYSDHR complaint, which contained allegations of sexual harassment, gender discrimination, and retaliation. (*See* NYSDHR Compl.)  While Plaintiff did not allege in the NYSDHR complaint the basis for the gender discrimination claims,[11] Plaintiff did

---

[11]  The sole reference to gender discrimination in the NYSDHR complaint is: "Ms. Gironda brings this Charge of Discrimination against [Defendants] due to their violation of her rights under the anti-gender discrimination and anti-retaliation provisions, found in both Title VII and the NYSHRL." (NYSDHR Compl. ¶ 5.)

specifically allege good faith and reasonable claims of sexual harassment[12] and retaliation, conduct prohibited by Title VII.  In addition, the delivery of the NYSDHR complaint notified Defendants that Plaintiff was complaining of conduct prohibited by Title VII.[13]  (Pl.'s 56.1 ¶ 57.1.)

Accordingly, although Plaintiff did not engage in protected activity when she notified Defendants that she would be filing an EEOC complaint, she did engage in protected activity of which Defendants were aware when on June 4, 2018 she provided Defendants with copies of her NYSDHR complaint prior to its filing.

### B.   Adverse action

Defendants argue that the involuntary transfer did not constitute a materially adverse employment action.  (Defs.' Mem. 9–13.)  In support, Defendants argue that Plaintiff did not allege that her salary or wages were reduced, that she experienced a loss of benefits, or lost any responsibilities.  (*Id.* at 10.)  In addition, Defendants argue that Plaintiff has failed to establish that her new position was objectively less desirable, and, moreover, that Plaintiff testified that she was happier and liked the school buildings and her coworkers better at her new position.  (*Id.* at 11.)

---

[12]  While claims of sexual harassment were specifically directed at Curra who was not named as a defendant in this case, Plaintiff's claims of retaliation based on her sexual harassment complaint were directed at the named Defendants. (*See* NYSDHR Compl.)

[13]  Although Defendants argue that the school had already decided to transfer Plaintiff before Plaintiff provided them with copies of the NYSDHR complaint and were therefore unaware that Plaintiff was complaining of conduct prohibited by Title VII when they made the transfer decision, (Defs.' Mem. 9), the Court does not consider this argument in determining whether Plaintiff engaged in protected activity.

Plaintiff argues that the involuntary transfer from second grade at one school to sixth grade at another school could be considered a materially adverse employment action because, as a result of the involuntary transfer, "her responsibilities were greater, the costs of materials were greater, and she needed to get to know new administrators."  (Pl.'s Opp'n 9.)

Adverse employment actions are actions that "could well have dissuaded a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination [or conduct prohibited by Title VII]."  *Davis-Garett v. Urban Outfitters, Inc*., 921 F.3d 30, 44 (2d Cir. 2019) (first quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006); and then citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020) (affirming that an adverse employment action for Title VII retaliation purposes is "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination," and that standard "covers a broader range of conduct than the adverse-action standard for claims of discrimination"); *O'Toole v. County of Orange*, 255 F. Supp. 3d 433, 442 (S.D.N.Y. 2017) ("Defendant's conduct, considered as a whole, meets the 'objective' standard, as the 'employment consequences of a negative nature' resulting from making a complaint could chill other employees from speaking up." (quoting *Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 147 (2d Cir. 2014))).  "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable."  *Hicks*, 593 F.3d at 165 (citing *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

24

Although Plaintiff did not suffer a pay cut, benefits, or loss of prestige, and was ultimately happier with her new position and at the new school, Plaintiff testified that the transition was difficult because she: (1) was reassigned from an elementary school to a middle school, where she no longer taught the same group of students all day and therefore had more students; (2) had to teach in an intensive inclusion setting (with the help of a special education teacher) for the first time; (3) had to learn how to use different technology used at the middle school; (4) had to become familiar with the school grading policies and procedures; (5) was forced to develop and teach a new curriculum without adequate support; and (6) had to spend money on new supplies.  (Pl.'s 56.1 ¶ 80.1; Gironda Dep. 252:17–262:7, 348:18–349:4.)

While reassignment of job duties can constitute a materially adverse employment action, "depend[ing] upon the circumstances of the particular case" and "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances," *White*, 548 U.S. at 71 (internal quotation marks and citation omitted), the reassignment must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Davis v. New York City Department of Education*, 804 F.3d 231, 235 (2d Cir. 2015) (citation omitted); *see also Vega*, 801 F.3d at 88 (explaining that assignments of excessive workload can constitute adverse actions because they are "more disruptive than a mere inconvenience or an alteration of job responsibilities"); *Forest v. New York State Office of Mental Health*, 672 F. App'x 42, 45 n.3 (2d Cir. 2016) ("[A]ssignments within an employee's job description are generally not materially adverse.").  Only where an employee is reassigned to a position that could be objectively considered less desirable or comes with diminished responsibilities, do courts find reassignments materially adverse employment actions.  *Compare White*, 548 U.S. at 71 (finding the reassignment materially adverse where there was evidence that the new position was objectively

inferior), *Kessler*, 461 F.3d at 209–210 (deciding the plaintiff had created a triable issue as to whether the transfer was materially adverse where the plaintiff was stripped of certain responsibilities), *and Flynn v. N.Y. State Div. of Parole*, 620 F. Supp. 2d 463, 491–92 (S.D.N.Y. 2009) (relying on evidence that the plaintiff's responsibilities had changed such that she was no longer responsible for supervising special cases of high interest and sensitive nature in finding it was for the jury to decide whether her responsibilities had changed so much that a reasonable employee would be dissuaded from complaining of gender discrimination), *with Domenech v. N.Y.C. Emps.' Ret. Sys.*, 564 F. Supp. 3d 126, 136 (E.D.N.Y. 2021) (concluding that there was no adverse action where there was no allegation that the transfer "was accompanied by a negative change to her employment conditions"), *Szwalla v. Time Warner Cable, LLC*, 135 F. Supp. 3d 34, 50–51 (N.D.N.Y. 2015), (finding the reassignment was not materially adverse where the only change to the plaintiff's working conditions was that she was required to report to a manager outside of her office and therefore could not fully participate in meetings), *aff'd*, 670 F. App'x 738 (2d Cir. 2016), *and Richards-Byers v. N.Y.C. Dep't of Fin.*, No. 05-CV-8486, 2010 WL 2834893, at *5–6 (S.D.N.Y. July 7, 2010) (deciding that the lateral transfer would not dissuade a reasonable employee from making a discrimination complaint because plaintiff did not suffer a decrease in salary, loss of benefits, less distinguished title or diminished responsibilities), *aff'd*, 449 F. App'x 55 (2d Cir. 2011).

Plaintiff has failed to establish that the transfer would dissuade a reasonable employee from making a Title VII complaint.  While Plaintiff testified that her role and responsibilities had changed, and that the reassignment came with financial costs and created additional work for her, she has not established that she suffered a decrease in salary or benefits, or that her new position

could be considered objectively[14] inferior or that it came with diminished responsibilities.  Thus, Plaintiff fails to establish that the lateral transfer would dissuade a reasonable employee from making a Title VII complaint.  Moreover, even assuming Plaintiff has created a triable issue of fact as to whether her responsibilities changed so much that a reasonable employee would be dissuaded from complaining of gender discrimination, for the reasons explained below, Plaintiff has nevertheless failed to establish a prima facie case of retaliation.

### C.   Causal connection

Defendants argue that Plaintiff cannot demonstrate a causal connection between the delivery of the NYSDHR complaint and her transfer.  (Defs.' Mem. 13–15; Defs.' Reply 8–10.)  In support, Defendants argue that the evidence shows that (1) Defendants made the decision to transfer Plaintiff to another school before Plaintiff provided Defendants with copies of the NYSDHR complaint, (2) Plaintiff knew about the transfer before she served her NYSDHR complaint, and (3) Plaintiff served the NYSDHR complaint when she did to feign temporal proximity between the events.  (Defs.' Mem. 15.)

Plaintiff argues that she has established a causal connection based on temporal proximity between her transfer and her NYSDHR complaint.  (Pl.'s Opp'n 14.)

A causal connection of retaliation can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by

---

[14]   Plaintiff's own subjective feelings about the transfer are irrelevant to whether the transfer was materially adverse.  *See White*, 548 U.S. at 68–69 (explaining that the standard is an objective one to avoid "uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings").

the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon*, 232 F.3d at 117); *see also Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003) ("Proof of such a causal connection 'can be established "directly through evidence of retaliatory animus directed against a plaintiff," or "indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . such as disparate treatment of fellow employees who engaged in similar conduct.'"" (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 444 (2d Cir. 1999), *abrogated on other grounds, White*, 548 U.S. at 53)); *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001) (same).

Ordinarily, "the requirement that [the plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two." *Feingold*, 366 F.3d at 156–57 (collecting cases); *see also Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (first citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001); and then citing *Gorzynski*, 596 F.3d at 110)); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) ("Ordinarily, causation may be inferred from close temporal proximity."). The Second Circuit has not defined "the outer limits beyond which a temporal relationship is too attenuated to establish causation." *See Gorzynski*, 596 F.3d at 110 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship.").

Plaintiff provided Defendants with copies of the draft complaint on June 4, 2018 and Defendants notified her of the involuntary transfer on June 7, 2018, three days later.  (Defs.' 56.1 ¶¶ 57–58, 61.)  Even if Defendants had informed Plaintiff of the transfer on June 5, 2018, as they

claimed they had planned to, (*id.* ¶¶ 55–56), Plaintiff nevertheless engaged in protected activity prior to being notified of the transfer.  This would ordinarily be sufficient to establish temporal proximity for purposes of a prime facie case.

However, Defendants argue that because the May 15, 2018 memorandum from the District counsel to Poole with instructions on how to effectuate the transfer demonstrated that Plaintiff was already at risk of the adverse action prior to Plaintiff's delivery of the NYSDHR complaint on June 4, 2018, Plaintiff cannot solely rely upon temporal proximity to demonstrate causality.  Defendants cite to *Williams v. City University of New York*, No 10-CV-2127, 2011 WL 6934755 (E.D.N.Y. Dec. 30, 2011) and *Fukelman v. Delta Air Lines, Inc.*, No. 18-CV-0002, 2020 WL 4587496 (E.D.N.Y. April 13, 2020) in support of their argument.  (Defs.' Reply 8.)  In *Williams*, the court found that because the defendant had previously imposed a registration hold on the plaintiff, the plaintiff was "demonstrably at risk" of another registration hold and could not rely on temporal proximity between the protected conduct and registration hold alone to establish a causal connection.  2011 WL 6934755, at *7.  In *Fukelman v. Delta Air Lines, Inc.*, the court found no causal connection between the protected conduct and the plaintiff's termination, where the plaintiff had already been investigated and suspended prior to engaging in the protected conduct.  2020 WL 4587496, at *21; *see also Gonzalez v. N.Y.U. Langone Hosps.*, No. 21-CV-2569, 2022 WL 4372199, at *2 (2d Cir. Sept. 22, 2022) ("[The plaintiff's] extensive history of performance issues and ongoing discipline dating back to 2010 — long before her protected activity in 2016—prevent her from establishing an indirect causal connection [through temporal proximity].");  *Lue v. JPMorgan Chase & Co.*, 768 F. App'x 7, 11 (2d Cir. 2019) ("[T]he record shows that defendants' criticisms of [the plaintiff's] communication style and her response to feedback predated her complaints of discrimination. Therefore, in the absence of

29

other evidence of an intent to retaliate, we conclude that the district court properly granted summary judgment."); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 252 (E.D.N.Y. 2015) (finding the plaintiff could not satisfy her burden based on temporal proximity alone because there was evidence that the plaintiff was under investigation for violations of the bylaws at time of firing).

The cases cited by Defendants are distinguishable because, in those cases, the defendants had already taken adverse actions against the plaintiffs, and the plaintiffs were aware that they were at risk of further adverse action. While Defendants have shown that they were already discussing and had contacted District counsel about involuntarily transferring Plaintiff, (Defs.' 56.1 ¶¶ 45–47, 51–52), Defendants had not yet taken any adverse actions against Plaintiff or notified Plaintiff that they were considering any adverse action.

Regardless, the Court assumes without deciding that Plaintiff has satisfied her prima facie case. However, for the reasons explained below, Plaintiff cannot meet her ultimate burden of showing that Defendants' legitimate, non-retaliatory reasons for transfer are pretext. *Zann Kwan*, 737 F.3d at 834 (explaining that although the very close temporal proximity between the events satisfied the plaintiff's prima facie case, it was insufficient to satisfy a plaintiff's ultimate burden at the pretext stage).

## 2. Defendant's legitimate, non-retaliatory reasons for transfer

Defendants argue that they have proffered legitimate, non-discriminatory reasons for the transfer. (Defs. Mem. 13–17; Reply 8–10.) First, as discussed above, they argue that the decision to transfer Plaintiff was made prior to delivery of the NYSDHR complaint on June 4, 2018. (Defs.' Mem. 14.) In support, they argue that Poole became aware of an opening in the sixth grade at some point in February and March of 2018, that he consulted with the District counsel about the possibility of involuntarily transferring Plaintiff, (*id.*), and reference a May 15,

2018 memorandum from the District counsel to Poole with instructions on how to effectuate the transfer, (*id.* at 14–15).

Second, Defendants argue that a transfer was "the right choice" because the relationship between Plaintiff and Carlson had become untenable.  (*Id.* at 18–19.)  For example, Plaintiff "refused to work with" Carlson, was "combative at every turn," and even "refus[ed] to be evaluated at her annual formal observations" by Carlson; Plaintiff requested that all communication between herself and Carlson be in writing; Plaintiff filed a grievance over a single line in her overwhelmingly positive 2015–2016 evaluation; Plaintiff complained that Carlson did not give her enough notice and treated her differently than her peers when Carlson emailed her a week before her December 2016 evaluation to schedule a pre-observation conference, even though Carlson's email said she was scheduling pre-observation conferences with all teachers; and Plaintiff stated that she was afraid to be in the same room as Carlson.  (*Id.* at 15–16.)

Third, Defendants argue that on May 14, 2018, Carlson sought guidance from Heyward after Plaintiff complained about an administrative decision without speaking to Carlson about the issue.  (*Id.* at 16.)  In the email to Heyward, Carlson expressed concerns regarding supervising Plaintiff stating, "[t]he fact that [Plaintiff] refuses to speak with me about any issues involving her classroom . . . is an indicator of her inability to maintain a professional working relationship with her direct supervisor."  (*Id.*)  Defendants argue that "[w]hether Defendants' [decision to transfer] Plaintiff was unreasonable, unfair or even untrue, as Plaintiff alleges, without any showing of retaliatory motive, they do not support Plaintiff's retaliation claim."  (*Id.* at 17.)

Plaintiff argues that "Defendants' proffered reasons for the involuntary transfer to the sixth-grade teaching assignment — that Plaintiff did not get along with Ms. Carlson or her

colleagues and that she was certified to teach sixth grade — are not sufficient non-retaliatory reasons," and further argues that "[i]n fact, these reasons underscore the discrimination based upon sex-stereotyping against Plaintiff (or a good faith reasonable belief that discrimination was occurring)." (Pl.'s Opp'n 16.) Defendants have established legitimate, nondiscriminatory reasons for the involuntary transfer; that Plaintiff could not get along with Carlson, her direct supervisor and the school principal. *See Weiping Liu v. Indium Corp. of Am.*, No. 16-CV-1080, 2019 WL 3825511, at *17, 21 (N.D.N.Y. Aug. 15, 2019) (finding the defendants satisfied their burden with evidence that the decision was based on plaintiff's difficulty working with others and insubordination); *Lai v. Delorio Foods, Inc.*, No. 15-CV-0195, 2018 WL 987258, *6 (N.D.N.Y. Feb. 20, 2018) ("[A] profound inability to get along with . . . coworkers . . . represents a legitimate nondiscriminatory reason for an employment decision." (quoting *Meiri*, 759 F.2d at 997)); *Giannone v. Deutsche Bank Sec.*, 392 F. Supp. 2d 576, 592 (S.D.N.Y. 2005) (finding the defendant had articulated a legitimate, non-retaliatory reason for the plaintiff's termination, specifically that the plaintiff was fired because she could not get along with her supervisor).

In addition, Poole testified that the decision to transfer was also based upon Plaintiff's complaints about the school security guards and staff, the open teaching position, and Plaintiff's teaching qualifications. (Defs.' 56.1 ¶ 48.) Because, as explained above, Plaintiff's complaints about the security guards and staff did not constitute protected conduct, Poole could permissibly rely on those complaints as evidence of untenable coworker relationships in making the decision to transfer Plaintiff. *See, e.g.*, *Weiping Liu*, 2019 WL 3825511, at *17 (finding the plaintiff's difficulty working with others and insubordinate behavior constituted legitimate, nondiscriminatory reasons for the adverse action); *Lai*, 2018 WL 987258, at *6 (explaining that

the plaintiff's inability to get along with others constituted a legitimate reason for the adverse action).

### 3.    Pretext

Defendants argue that Plaintiff cannot show pretext, because "the decision to transfer was contemplated well before she served Defendants with her draft [NY]SDHR Complaint, and she admittedly could not maintain a working relationship with" Carlson.  (Defs.' Mem. 18.)  In support, Defendants argue that because of the "turbulent relationship" between Plaintiff and Carlson and Plaintiff's "insistence" that Carlson "not be responsible for her formal evaluations," they made the right choice by transferring Plaintiff to a new school with a different supervisor. (*Id.* at 19.)  In addition, "since Plaintiff had previously stated she could not work with Louis Parrinello, the principal at the only other elementary school in the District, there was no other choice but to send Plaintiff to the middle school, in a position which she is unquestionably qualified to teach."  (*Id.*)  Moreover, with the transfer, "all parties were better off and none were worse off."  (*Id.*)  Finally, Defendants argue there is no evidence upon which a jury could find by a preponderance of the evidence that the Defendants' reasons for the transfer were pretext and that Defendants would not have transferred her but for her NYSDHR complaint.  (Defs.' Reply 9–10.)

Plaintiff argues that "Defendants' proffered reasons for the involuntary transfer" "underscore the discrimination based upon sex-stereotyping against Plaintiff (or a good faith reasonable belief that discrimination was occurring)."  (Pl.'s Opp'n 16.)  In support, Plaintiff argues that "[r]ather than address the complaints of sex discrimination, the School District used the involuntary transfer to retaliate against Plaintiff in order to eliminate the perceived problem." (*Id.* at 17.)  Plaintiff argues that Defendants' proffered reasons for the transfer were that "they

just could not stand her" and that it was clear that they viewed Plaintiff as a "know-it-all who second-guessed her superiors." (*Id.*) Plaintiff argues that Defendants' reliance on her outspoken and difficult behavior in justifying the transfer instead supports her argument that she was discriminated against on the basis of sex-stereotyping and, in turn, supports her claim of retaliation. (*Id.*)

To survive summary judgment on a claim of retaliation, a plaintiff must show that retaliatory intent was the "but-for" cause of any wrongful actions — that is, "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see Hua Lin v. N.Y.S. Dep't of Labor*, 720 F. App'x 89, 90 (2d Cir. 2018) (same); *Russell*, 739 F. App'x at 32 (noting that to be actionable, the retaliation must have been the "'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor." (quoting *Zann Kwan*, 737 F.3d at 845)); *Zann Kwan*, 737 F.3d at 850 (Parker, J., concurring) (citing *Nassar*, 570 U.S. at 360) (noting that Title VII retaliation claims must show "but-for" causation). "Temporal proximity alone is insufficient to defeat summary judgment at [this] stage." *Zann Kwan*, 737 F.3d at 847; *see Ya-Chen Chen*, 805 F.3d at 72 ("We have long held that 'temporal proximity' between a protected complaint and an adverse employment action 'is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext.'" (alterations in original) (quoting *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010)); *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014) ("[T]emporal proximity alone is not enough to establish pretext in this Circuit." (citing *El Sayed*, 627 F.3d at 933)); *Abromavage v. Deutsche Bank Sec. Inc.*, No. 21-CV-0668, 2022 WL 4360950, at *2 (2d Cir. Sept. 21, 2022) (same). "However, a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together

with other evidence such as inconsistent employer explanations, to defeat summary judgment at [the pretext] stage." *Zann Kwan*, 737 F.3d at 847 (finding close temporal proximity and inconsistent explanation for termination sufficient to raise a triable issue of fact as to pretext); *see Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 654–56 (S.D.N.Y. 2015) (finding temporal proximity of mere days along with the lack of evidence or indication that the employee was a poor performer sufficient to raise a triable issue of fact as to pretext).

The record is devoid of evidence from which a jury could conclude that Defendants' proffered reasons for the transfer were pretext and that Plaintiff's protected conduct was the but-for cause of the involuntary transfer. The temporal proximity between the two events is insufficient to defeat a motion for summary judgment. *Zann Kwan*, 737 F.3d at 847. Moreover, the undisputed evidence establishes that on May 15, 2018, Defendants' District counsel had prepared and sent to Defendants a memorandum advising Defendants on how to effectuate the involuntary transfer, establishing that Defendants asked District Counsel to look into the transfer well before Defendants received copies of the NYSDHR complaint on June 4, 2018. (Defs.' 56.1 ¶¶ 51–52.) Other than Plaintiff's conclusory allegations that she was transferred because of her protected conduct, Plaintiff has not provided any evidence from which a reasonable jury could conclude that the decision to transfer was based on retaliatory intent. Because Plaintiff has failed to raise a triable issue to fact as to her claim, the Court grants Defendants' motion for summary judgment and dismisses this claim.

### ii. Title VII claim based on other actions

For the reasons explained below, Plaintiff likewise fails to raise a triable issue of fact as to Plaintiff's retaliation claim based on her (a) 2018 classroom evaluation, (b) roster assignment and (c) classroom assignment. Thus, the Court dismisses the claim.

### 1.    2018 classroom evaluation

Defendants argue that Plaintiff's claim that the 2018 post-observation evaluation remarks were made in retaliation for her NYSDHR complaint, predated her transfer and were not materially adverse because they were not part of the written evaluation and her evaluation was overwhelmingly positive.  (Defs.' Mem 12–13.)

Plaintiff argues that Carlson's verbal criticism made during her 2018 post-observation meeting "could have dissuaded a reasonable worker from making or supporting a charge of discrimination."  (Pl.'s Opp'n 8.)

Because the Court finds that Plaintiff's sole protected conduct was her delivery of the NYSDHR complaint on June 4, 2018, over three months after Carlson's comments to Plaintiff in February of 2018, Carlson's comments cannot constitute retaliatory acts.  (Defs.' 56.1 ¶¶ 57–58; Pl.'s 56.1 Suppl. ¶ 2.)  Plaintiff's protected conduct could not have caused the purported adverse actions.

In addition, evaluations generally are not considered materially adverse actions where they do not result in any negative consequence.  *See, e.g.*, *Colton v. State of N.Y. Div. of State Police*, No. 14-CV-0801, 2017 WL 5508911, at *16 (N.D.N.Y. Feb. 8, 2017) ("[R]eprimands that do not lead to materially adverse employment consequences are generally not considered actionable forms of retaliation." (quoting *Dotson v. City of Syracuse*, No. 04-CV-1388, 2009 WL 2176127, at *18 (N.D.N.Y. July 21, 2009))); *Frazier v. City of N.Y. Dep't of Corr.*, No. 14-CV-1224, 2016 WL 4444775, at *3 (E.D.N.Y. Aug. 23, 2016) (stating same and collecting cases); *Alywahby v. Shinseki*, No. 01-CV-6512, 2009 WL 5166271, at *5 (E.D.N.Y. Dec. 29, 2009) (noting that "reprimands are routinely considered insufficiently material to constitute adverse action under Title VII" and finding that "no reasonable employee would consider this reprimand

36

. . . to have been materially adverse"); *Nieves v. Dist. Council 37*, No. 04-CV-8181, 2009 WL 4281454, at *8 (S.D.N.Y. Nov. 24, 2009) ("Cases within the Second Circuit . . . have held that performance warnings, without more, do not constitute a materially adverse action."). Carlson's verbal comments were not part of Plaintiff's written evaluation and there is no evidence that the reprimand led to any adverse employment consequences.

Therefore, the Court grants Defendants' motion for summary judgment as to Plaintiff's Title VII retaliation claim relating to the post-observation remarks Carlson purportedly made to Plaintiff.[15]

## 2. Plaintiff's roster assignment

Plaintiff argues that Defendants' actions subsequent to the transfer, including giving her a "problematic roster of students," were retaliatory. (Pl.'s Opp'n 1–2, 4; Pl.'s 56.1 ¶ 88.3.) Defendants do not address this argument.

Even assuming that her roster assignment or refusal to change her roster assignment could constitute a materially adverse employment action, which Plaintiff fails to specifically argue in her brief, Plaintiff has not provided any evidence from which a reasonable jury could conclude that her NYSDHR complaint led to her roster assignment. Plaintiff fails to provide any evidence as to when she was assigned her "problematic roster" and therefore does not

---

[15]  Plaintiff also argues that Defendants retaliated against her by stripping her of responsibilities by removing her from certain committees, but this argument fails because Plaintiff testified that this occurred in August of 2016, years before Plaintiff engaged in the protected conduct at issue. (Gironda Dep. 117:15–24.) Because this act was not in retaliation to the NYSDHR complaint, the Court dismisses Plaintiff's Title VII retaliation claim based on her removal from committees.

demonstrate temporal proximity between the NYSDHR complaint and the roster assignment.[16]

In addition, Plaintiff admitted that she did not know who was responsible for making the rosters. (Gironda Dep. 245:12–14.)  While Plaintiff testified that the District Office had the final say, (*id.* at 248:5–10), she does not provide any evidence to establish when the District Office was notified of her complaints about the roster or who reviewed those complaints.  *See Conway v. Healthfirst Inc.*, No. 21-CV-6512, 2022 WL 4813498, at *4 (S.D.N.Y. Sept. 30, 2022) (refusing to infer that there was any temporal proximity between the accommodation requests and the rejection emails because Plaintiff did not identify when he specifically made the accommodation requests and or when he received emails notifying him of rejection emails).  Moreover, Plaintiff complained about an unfair and large roster in other school years prior to serving the NYSDHR complaint, which undermines her argument that she was assigned a large roster in retaliation for her protected conduct.  (Defs.' 56.1 ¶ 77; Pl.'s 56.1 ¶ 77.1.)  *See Williams*, 2011 WL 6934755, at *7 (finding no causal connection between the protected activity and the adverse action because the defendants had previously engaged in the adverse action prior to the protected activity).  Plaintiff has failed to establish a causal connection between her protected conduct and her large and "problematic" roster.

---

[16]  In her Counter-Statement of Facts, Plaintiff asserts that one of her complaints was related to one of the students on her roster for the 2019–2020 school year, over a year after Plaintiff filed her NYSDHR complaint.  (Pl.'s 56.1 ¶ 77.1.)  In addition, Plaintiff testified that she was assigned the largest roster of all the sixth-grade teachers during the COVID-19 pandemic, which did not begin until the spring of 2020, close to two years after Plaintiff delivered and filed the NYSDHR complaint.  (Gironda Dep. 243:13–25.)  Drawing all reasonable inferences in Plaintiff's favor, the Court cannot determine exactly when Defendants engaged in these purportedly adverse actions, it cannot conclude that there was temporal proximity between the NYSDHR complaint and any of the purportedly adverse acts.

Due to the lack of evidence of temporal proximity between the NYSDHR complaint and Plaintiff's roster assignments, and the absence of any other evidence demonstrating a causal connection between these events, the Court grants Defendants' motion as to Plaintiff's Title VII retaliation claim relating to Plaintiff's roster assignment.

### 3.   Plaintiff's classroom assignment

Plaintiff argues that Defendants retaliated against her by assigning her to a classroom with purportedly a hazardous computer server and without proper ventilation during the COVID-19 pandemic.  (Pl.'s Opp'n 1–2, 4; Pl.'s 56.1 ¶ 88.3.)  Defendants do not respond to this argument.

Assuming without deciding that such an assignment could constitute a materially adverse action, Plaintiff has not provided any evidence to establish a causal connection between her protected conduct and her room assignment.  Plaintiff has not provided any evidence to establish when she was assigned to the room,[17] when she complained to Defendants about the room, or that she was assigned to this room because she served Defendants with and filed the NYSDHR complaint.   In addition, while Plaintiff testified that Defendants were aware of her complaints about the room assignment, (Gironda Dep. 13:13–14), she does not provide any evidence that Defendants, rather than the principal or another person, assigned her to the room or that they specifically considered and refused her request to be reassigned to another room.  Nor does she provide any evidence that the other classrooms had better ventilation.  While Plaintiff testified that hers was the only room with a computer server that she believed released hazardous

---

[17]   Plaintiff's testimony suggests that she was assigned to this classroom during the COVID-19 pandemic, which would be almost two years after Plaintiff served and filed the NYSDHR complaint.  (Gironda Dep. 243:13–22.)

emissions, the record does not contain any evidence from which a jury could find that she was assigned to this room because she filed the NYSDHR complaint.

Accordingly, the Court dismisses Plaintiff's Title VII retaliation claim based on Plaintiff's classroom assignment.

**III.   Conclusion**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment and dismisses Plaintiff's Title VII retaliation claim.

Dated: March 30, 2023
       Brooklyn, New York

SO ORDERED:

_____ s/ MKB _____
MARGO K. BRODIE
United States District Judge
